# In the United States Court of Federal Claims

No. 11-289C

(Filed: November 14, 2011)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*
                                           \*
GONZALES-MCCAULLEY INVESTMENT              \*
GROUP, INC.,                               \*
                                           \*  Motion for Summary Judgment;
                                           \*  Issues of Government Contract
                                           \*  Formation; Interpretation of FAR
                     Plaintiff,            \*  13.004(a); Use of Prior Course of
                                           \*  Dealing Evidence.
v.                                         \*
                                           \*
THE UNITED STATES,                         \*
                                           \*
                     Defendant.            \*
                                           \*
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*  \*

*Mark Schondorf*, Law Offices of Mark Schondorf, Chicago, Illinois, with whom was *Scott Mattingly*, Law Offices of Scott Mattingly, Los Angeles, California, for Plaintiff.

*Anna Bondurant Eley*, with whom were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Claudia Burke*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER

WHEELER, Judge.

Plaintiff, Gonzales-McCaulley Investment Group, Inc. ("GMIG"), filed a complaint in this Court on May 9, 2011, alleging that it had entered into a contract with the U.S. Department of Health and Human Services ("HHS"), which HHS breached by rescinding the contract without explanation. On July 8, 2011, Defendant moved to dismiss or, in the alternative, for summary judgment, pursuant to Rules 12(b)(6) and 56 of the Court of Federal Claims ("RCFC"). For the reasons stated below, Defendant's motion for summary judgment is GRANTED.

Factual Background[1]

GMIG is a government contractor incorporated under the laws of California and maintains its principal place of business there. Compl. ¶ 1, May 9, 2011. GMIG is a service disabled veteran-owned, minority-owned business, and is certified by the Small Business Administration as a Section 8(a) Program Participant and a Small Disadvantaged Business. Id. Ex. A. Mr. Ollie McCaulley is GMIG's President. Id.

"HHS University" is an HHS component that manages HHS's employee training and development programs. Id. ¶ 4. Ms. Elizabeth Branker is the Training Program Manager for HHS University. Def.'s Mot., Jul. 8, 2011, App. at A2.

    A. HHS University's Request for Quotations and Selection of GMIG's Submission

        1. Request for Quotations

Pursuant to the Government Employees Training Act ("GETA"), 5 U.S.C. §§ 4101-4118 (2006), federal agencies may establish and operate employee-training programs, including programs conducted "through non-Government facilities." § 4105; see also Compl. ¶¶ 5, 7, May 9, 2011. On May 11, 2007, Ms. Branker issued a request for quotations ("RFQ") "to provide quality, cost-effective training in the various Grants Management courses offered through HHS University" in fiscal year 2008. Def.'s Mot., Jul. 8, 2011, App. at A1-A3. Ms. Branker attached to the RFQ a list of the eight training course topics. See id. at A4-A5. Apparently, some of the training courses were to be held at HHS University in Rockville, Maryland, and others would be conducted at the Centers for Disease Control and Prevention ("CDC") in Atlanta, Georgia. See Compl., May 9, 2011, Ex. C. Among other selection criteria, the RFQ requested the following information: (i) "Technical Capability/Subject Matter Expertise;" (ii) "A statement showing an understanding of the requirements;" and (iii) "Assurance of sufficient staff, resources and instructor knowledge." Def.'s Mot., Jul. 8, 2011, App. at A2. The RFQ provided that submissions were due no later than May 31, 2007. Id.

---

[1] The facts in this opinion do not constitute findings of fact by the Court. Rather, the facts are taken from Defendant's proposed findings of uncontroverted fact ("PFUFs"), Plaintiff's response to Defendant's PFUFs, and supporting exhibits furnished with the parties' various filings. The Court is satisfied that the material facts necessary to render its decision, as set forth in this opinion, are not in dispute. For clarity, the Court will refer to Plaintiff's response to Defendant's PFUFs as "Pl.'s Resp. Def.'s PFUFs, Aug. 5, 2011" and Plaintiff's response to Defendant's July 8, 2011 motion as "Pl.'s Mem., Aug. 5, 2011." Additionally, the Court will refer to the declaration of HHS employee Ms. Trina Greer as "Greer Decl., Jul. 7, 2011." The Court also will reference other GMIG proceedings, including two bid protests at the Government Accountability Office ("GAO"), a district court action, and a previous action in this Court before Judge Damich.

On May 30, 2007, GMIG submitted its cover letter and "quote to provide grant training class[es] in partnership with HHS University for the fiscal year 2008." Compl., May 9, 2011, Ex. A. In its cover letter, GMIG referred to "pricing and discounts" available to HHS University, depending upon the training classes HHS University ordered from the "Grants Courses" catalog found in Part IV of GMIG's quote. Id. Apparently, GMIG also had furnished HHS University with a "course book" binder at some previous date. See Gonzales-McCaulley Inv. Grp., Inc. ("GMIG II"), B-299936.2, 2007 CPD ¶ 192 (Comp. Gen. Nov. 5, 2007) at 3. However, GMIG did not refer to that binder in its cover letter or quotation. See Compl., May 9, 2011, Ex. A.

    2. Selection of GMIG's Submission

Ms. Branker sent an email to Mr. McCaulley on June 19, 2007 stating, "I have attached confirmation of selection to provide training in Grants Management to HHS University. Please feel free to contact me with possible dates to conduct training for FY2008 1st and 2nd Quarter classes." Id. Ex. B. She attached a letter confirming selection of GMIG for courses in all eight training topics. See Def.'s Mot., Jul. 8, 2011, App. at A6. Mr. McCaulley responded to Ms. Branker later that same day:

> Thank you, for the opportunity to work with HHS University providing grants classes. Because of GMIG's commitment to succeed with HHS, we will work with the tentative or firm dates you may have in place at this time. Mr. Ron Thompson will be my chief instructor for working with HHS. If you have any dates selected at this time please forward them to me so that I can put them on Mr. Thompson's calendar for the 1st and 2nd quarter of 2008.

Compl., May 9, 2011, Ex. B. In addition to GMIG, HHS University selected the incumbent, Management Concepts, Inc., and one other vendor to provide some of the training courses. GMIG II, B-299936.2 at 2 (internal citation omitted).

On June 20, 2007, Ms. Branker provided Mr. McCaulley with some "tentative dates" to hold training courses, which GMIG "put on [its] calendars for FY2008." Compl., May 9, 2011, Ex. C. The next day, June 21, 2007, Ms. Branker provided Mr. McCaulley with additional dates for CDC training courses in Atlanta, to which Mr. McCaulley replied "[t]hank you" on June 22, 2007. Id. On the morning of June 26, 2007, Ms. Branker sent an email to Mr. McCaulley to request that he propose dates for the remaining first and second quarter classes by the close of business on June 28, 2007. Id. Mr. McCaulley responded to Ms. Branker later the same day, explaining that GMIG had adopted her tentative dates and had assigned instructors. See id.

B.  HHS University's Rescission of GMIG's Selection

Ms. Kimberly Hill is the Manager of the Center for Administrative and Systems Training at HHS University.  Id. Ex. D; see also GMIG II, B-299936.2 at 3 (referring to the email in Exhibit D of GMIG's May 9, 2011 complaint as the "Center Manager's E-mail").  She oversees HHS University's vendor selection process.  GMIG II, B-299936.2 at 2.  Ms. Trina Greer is the Director, and Chief Learning Officer, of HHS University.  Greer Decl. ¶ 1, Jul. 7, 2011.

Upon reviewing the website of Management Concepts, the incumbent, Ms. Hill determined that the materials GMIG had provided with its submission to the RFQ, see Compl., May 9, 2011, Ex. A, were very similar.  GMIG II, B-299936.2 at 3 (internal citation omitted).  Indeed, upon subsequent review, the GAO determined "that the two vendors' course descriptions and learning objectives were virtually identical."  Id. at 3 n.3.  Ms. Hill did not seek an explanation from GMIG or otherwise explore the reasons for the similarity.  Id. at 3.  On June 27, 2007, Ms. Hill notified Mr. McCaulley:

> It came to our attention today that the grants course information you included in your proposal is not your own.  Therefore, I am withdrawing the offer letter from HHS University.  We will not be contracting with you for grants management training in FY08.

Compl., May 9, 2011, Ex. D.  In response, GMIG contacted HHS University and requested that it review GMIG's course binder, asserting that the binder materials would illustrate the two contractors' different curricula and GMIG's individual capabilities.  GMIG II, B-299936.2 at 3.  On June 29, 2007, Ms. Hill declined to reconsider her decision, explaining that GMIG had failed to reference the binder in its original cover letter and quotation.  Id. (internal citation omitted).

C.  GMIG's Initial Protest to GAO

On July 2, 2007, GMIG protested HHS's rescission of its selection to the GAO.  Id. at 2-3 (referring to this protest as the "Initial Protest"); see also Gonzales-McCaulley Inv. Grp., Inc. ("GMIG I"), B-299936.1.  In defense, HHS contended that GMIG's possible plagiarism left HHS University with "an insufficient basis on which to evaluate GMIG's quotation as technically acceptable" and "little confidence in regard to its independent knowledge of the course material and its ability to convey appropriate information through its course instruction."  GMIG II, B-299936.2 at 3-4 (internal citations omitted).

Nevertheless, before the GAO could issue a decision, HHS canceled the May 11, 2007 RFQ and rescinded its remaining selections.  Id. at 4.  HHS alleged that the

4

Secretary had not properly delegated acquisition authority under GETA to HHS University.  Id. (internal footnote omitted).  Therefore, due to the cancellation, the GAO dismissed GMIG's protest as "academic" on August 7, 2007.  Id.

### D. GMIG's Second Protest to GAO

GMIG protested to the GAO again on August 8, 2007, averring that the Secretary's delegation of authority was proper or, in the alternative, that the delegation issue was a mere pretext to cancel the RFQ.  Id.  The GAO ultimately agreed with HHS that the Secretary's delegation to HHS University was not proper.  Id. at 5.  However, the GAO agreed with GMIG that the issue was a pretext, as "a number of" other HHS University training course procurements were ongoing yet HHS only canceled the May 11, 2007 RFQ.  Id.  The GAO also noted that Ms. Hill "did not reasonably investigate her suspicions of plagiarism prior to rescinding GMIG's selection," citing her refusal to consider GMIG's course binder.  Id. at 6 (internal footnote omitted).

During the pendency of GMIG's second protest, HHS properly re-delegated the necessary GETA acquisition authority to HHS University.  Id. at 4 n.4.  Thus, the GAO recommended that HHS "reinstate the solicitation and reevaluate the quotations, considering all information presented by the vendors in response to the plagiarism allegations."  Id. at 6 (internal footnote omitted).

HHS, however, did not reinstate the May 11, 2007 RFQ.  See Def.'s Mot., Jul. 8, 2011, App. at A16.  Instead, HHS decided to bring HHS University's grants training and development in-house.  Id.  As a result, GMIG did not provide any grants training courses for HHS University during fiscal year 2008.  Greer Decl. ¶ 3, Jul. 7, 2011.

## Procedural History

### A. Proceedings Before the Central District of California

On December 18, 2008, GMIG filed a complaint in the U.S. District Court for the Central District of California against HHS and Deputy Secretary Tevi Troy (in his official capacity).  See Gonzalez-McCaulley Inv. Grp., Inc. v. Dept. of Health & Human Servs. ("GMIG III"), No. 2:08-cv-08352-VBF-JC (Fairbank, J.), Compl., Docket No. 1.[2]  To cure jurisdictional defects, the district court transferred the matter to this Court on March 31, 2009, pursuant to 28 U.S.C. § 1631 (2006).  See GMIG III, Transfer Order, Docket No. 6.

---

[2] Plaintiff has referred to itself as both "Gonzales-McCaulley" and "Gonzalez-McCaulley" Investment Group in its various filings in the instant proceedings.  Compare Compl., May 9, 2011, with Pl.'s Mem., Aug. 5, 2011.  While the undersigned, like the GAO, adopts the "Gonzales-McCaulley" spelling, Judge Fairbank and later Judge Damich adopted the alternative "Gonzalez-McCaulley" spelling.

5

B. <u>GMIG's Transfer Complaint Before Judge Damich</u>

GMIG filed a three-page transfer complaint in this Court on October 27, 2009, asserting that HHS was in breach of contract and demanding a jury trial, "general damages in the amount of $400,000," and "consequential damages in the amount of $500,000." Gonzalez-McCaulley Inv. Grp., Inc. v. United States ("GMIG IV"), No. 09-0641C (Damich, J.), Transfer Compl. at 2, Docket No. 4.[3]

Defendant moved to dismiss pursuant to RCFC 12(b)(1), for failure to meet the RCFC 9(k) requirements of a well-pleaded contract complaint. GMIG IV, Def.'s Mot. at 1 (Apr. 23, 2010), Docket No. 10. In response to Defendant's motion to dismiss, and pursuant to RCFC 15(a)(2), GMIG requested an opportunity to amend its complaint by leave of the Court. GMIG IV, Pl.'s Mem. at 5 (May 24, 2010), Docket No. 11. In its memorandum, GMIG explained that (i) "[t]he contract at issue is, at the very least, implied in fact" and "issued pursuant to authority granted by . . . [GETA];" and (ii) the Government violated the Competition in Contracting Act ("CICA"), 41 U.S.C. § 253 (current version at 41 U.S.C. §§ 3105, 3301-3305), and the Contract Disputes Act ("CDA"), 41 U.S.C. §§ 601-613 (2006) (current version at 41 U.S.C. §§ 7101-7109). Id. at 2-4. On August 3, 2010, Judge Damich denied Defendant's motion to dismiss, allowing GMIG to amend its complaint to address:

> (1) the substantive provisions of the contract, required by RCFC 9(k), and the elements of a contract implied in fact with the Government; (2) any violation of a specific provision of CICA; and (3) whether Plaintiff is alleging a CDA claim and, if so, whether it has complied with the CDA dispute resolution process.

GMIG IV, 93 Fed. Cl. 710, 717 (2010).

C. <u>GMIG's Amended Complaint Before Judge Damich</u>

On September 2, 2010, GMIG filed its amended complaint, positing that HHS University did have proper GETA acquisition authority at the time of GMIG's June 19,

---

[3] Despite Judge Damich's advice that (i) this Court does not hold jury trials and (ii) the Seventh Amendment right to jury trial does not apply in cases against the Government, see GMIG IV, 93 Fed. Cl. at 713 n.1, GMIG again demanded a jury trial in its amended complaint before Judge Damich and in its present complaint before the undersigned. See Compl., May 9, 2011; GMIG IV, No. 09-0641C, Am. Compl. (Sep. 2, 2010), Docket No. 15. Similarly, in repeated filings, despite notice from both Judge Damich and Defendant, GMIG cited to incorrect code sections and failed to heed jurisdictional prerequisites. See, e.g., Compl., May 9, 2011, Ex. E (failing to certify claim to contracting officer); GMIG IV, No. 09-0641C, Def.'s Mot. at 3-4 n.2 (Jan. 3, 2011) (confusing the Competition in Contracting Act with the Contract Disputes Act), Docket No. 20; GMIG IV, 93 Fed. Cl. at 713 n.2 (citing to GETA incorrectly).

2007 selection under the May 11, 2007 RFQ.  GMIG IV, No. 09-0641C, Am. Compl. ¶¶ 5-10, 19, Docket No. 15.  GMIG alleged that Ms. Branker's June 19, 2007 email to Mr. McCaulley, confirming GMIG's selection under the RFQ, constituted a contract award pursuant to 41 U.S.C. § 253b(d) (2006) (current version at 41 U.S.C. § 3703).  Id. ¶¶ 10-11.  Moreover, GMIG added that the totality of its email exchanges with HHS University indicated HHS University's contract award and GMIG's acceptance.  Id. ¶¶ 8-12, 18.  Finally, GMIG asserted that HHS breached the parties' contract by rescinding the award without reasonable investigation of the suspected plagiarism.  Id. ¶¶ 13-16, 21.  GMIG requested the same relief, of $400,000 in "general damages" and $500,000 in "consequential damages," as in its October 27, 2009 transfer complaint.  Id. at 5.

Defendant answered on September 21, 2010 and, on January 3, 2011, again moved to dismiss pursuant to RCFC 12(b)(1).  See GMIG IV, Docket Nos. 16, 20.  In its motion to dismiss, Defendant noted that GMIG had failed both to submit a certified claim to the appropriate HHS contracting officer and to obtain a denial or deemed denial, as required to bring a CDA claim before this Court.  GMIG IV, Def.'s Mot. at 3-6 (Jan. 3, 2011), Docket No. 20; see also 41 U.S.C. § 605 (2006) (current version at 41 U.S.C. § 7103).  On January 5, 2011, GMIG conceded its jurisdictional deficiency during a telephonic status conference with the Court.  GMIG IV, No. 09-0641C, Dismissal Order, Docket No. 21.  In an order later that day, Judge Damich dismissed GMIG's amended complaint without prejudice.  See id.

### D.  GMIG's Claim to HHS's Contracting Officer

GMIG submitted an uncertified claim to HHS's contracting officer on January 18, 2011, and resubmitted a certified claim on January 20, 2011.  Compl., May 9, 2011, Ex. E.  The contracting officer denied the certified claim on February 24, 2011, rejecting GMIG's arguments that (i) GMIG's submitted "quote" under the May 11, 2007 RFQ constituted an offer, and (ii) Ms. Branker's June 19, 2007 email to Mr. McCaulley, confirming HHS's selection of GMIG's quote, constituted an acceptance.  Id.  Moreover, the contracting officer questioned GMIG's demands for both $444,551 in contract damages and $500,000 in lost profits as not "comprehensible."  Id.

### E.  GMIG's Instant Complaint

On May 9, 2011, GMIG filed its complaint in this action, averring that (i) HHS University had proper GETA acquisition authority, id. ¶¶ 5-11, 13, 24; (ii) GMIG's submission under the May 11, 2007 RFQ constituted an offer, which Ms. Branker accepted through her June 19, 2007 email, id. ¶¶ 13-16, 23-24; (iii) in the alternative, Ms. Branker's June 19, 2007 email constituted an "order" under 48 C.F.R. ("Federal Acquisition Regulation" or "FAR") § 13.004(a) (2011), which GMIG accepted through

the totality of its email exchanges with Ms. Branker, id. ¶¶ 17-19, 23-24;[4] and (iv) HHS breached its contract with GMIG "without justification," id. ¶¶ 20, 26.  Again, GMIG demanded "general damages" of $400,000 and "consequential damages" of $500,000.  Id. at 6.  Additionally, GMIG noted that it "had contracted with and fulfilled training contracts with Defendant HHS on at least twenty (20) separate occasions prior to the events forming the Causes of Action." Id. ¶ 12.  In a subsequent filing, GMIG added that HHS's decision to bring grants training and development in-house "is suspect" because Ms. Hill did not cite the decision in her June 27, 2007 rescission email to Mr. McCaulley, HHS did not cite it as a defense before the GAO, and HHS "had continued to engage outside contractors, including Plaintiff, for other contracts at the same time." Pl.'s Resp. Def.'s PFUFs ¶ 17, Aug. 5, 2011.

On July 8, 2011, Defendant moved to dismiss pursuant to RCFC 12(b)(6) or, in the alternative, for summary judgment pursuant to RCFC 56.  See Def.'s Mot. 1, Jul. 8, 2011.  Defendant denied that (i) Ms. Branker's June 19, 2007 email to Mr. McCaulley constituted an acceptance within the meaning of FAR 13.004(a), id. at 7-8; (ii) the June 19, 2007 email constituted an "offer letter," despite Ms. Hill's use of the term in her June 27, 2007 rescission email, id. at 8; or (iii) any of Ms. Branker's emails to Mr. McCaulley amounted to an "order" within the meaning of FAR 13.004(a), id. at 8-9.  Furthermore, Defendant characterized it as "utterly implausible that, by reason of the breach of an alleged agreement that GMIG neither performed nor even began performing, GMIG was damaged in the amount of $900,000, more than double the alleged contract amount." Id. at 9.[5]

## Standard of Review

In reviewing a motion to dismiss, the Court "must accept all well-pleaded factual allegations as true and draw all reasonable inferences in [Plaintiff's] favor." Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000).  Plaintiff must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  Accordingly, Plaintiff must provide more than mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1950 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that

---

[4] The Court will define FAR 13.004(a) supra, in the Discussion section below.

[5] Since the Court grants Defendant's motion for summary judgment, it need not reach this damages issue.

the defendant is liable for the misconduct alleged." Id. at 1949 (quoting Twombly, 550 U.S. at 556).

Where "matters outside the pleadings are presented to and not excluded by the court," the Court may treat a motion to dismiss as a motion for summary judgment. RCFC 12(d); see Easter v. United States, 575 F.3d 1332, 1335 (Fed. Cir. 2009). "Whether to accept extra-pleading matter on a motion for judgment on the pleadings and to treat the motion as one for summary judgment is within the trial court's discretion." Easter, 575 F.3d at 1335.

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); see Arko Exec. Servs., Inc. v. United States, 553 F.3d 1375, 1378 (Fed. Cir. 2009) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)). By contrast, summary judgment is not appropriate where "the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248. In reviewing a motion for summary judgment, the benefit of all factual inferences runs in favor of the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). "However, bald assertions and speculation do not create an evidentiary conflict sufficient to defeat a summary judgment motion." Lathan Co., Inc. v. United States, 20 Cl. Ct. 122, 125 (1990) (citing Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd., 731 F.2d 831, 836 (Fed. Cir. 1984)). The plain language of RCFC 56(a) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Here, the Court treats Defendant's July 8, 2011 motion as one for summary judgment. In the period since Defendant's motion, the parties fully briefed this dispute, and on September 27, 2011, the Court heard oral argument. At Plaintiff's initiative, briefing extended to the surreply stage, see Pl.'s Mem., Sep. 22, 2011; Pl.'s Mot., Sep. 22, 2011, and covered issues beyond Plaintiff's May 9, 2011 complaint. For example, in its August 5, 2011 memorandum, Plaintiff advanced a contract formation theory predicated on the parties' prior course of dealing, which Plaintiff had not included in its complaint. Pl.'s Mem. 7-8, Aug. 5, 2011; see also Def.'s Mem. 2, Sep. 22, 2011 ("GMIG radically shifted its theory of the case in its response to our motion."); Def.'s Mem. 2-3, 2 n.1, Sep. 12, 2011. Among other evidence, the Court also has considered two declarations from Mr. McCaulley, which Plaintiff submitted with its briefs. See McCaulley Decl., Sep. 22, 2011; McCaulley Decl., Aug. 5, 2011. More than four years after HHS's ill-fated RFQ for grants training and development—and after two protests to the GAO, a complaint in district court, and three complaints in this Court—this case is ready for a decision on the merits.

Discussion

Despite its convoluted factual and procedural backdrop, this case ultimately turns on basic contract formation principles. "To prove the existence of a contract with the government, a plaintiff must prove four basic elements: (1) mutuality of intent to contract; (2) offer and acceptance; (3) consideration; and (4) a government representative having actual authority to bind the United States." Hometown Fin., Inc. v. United States, 409 F.3d 1360, 1364 (Fed. Cir. 2005). Here, at a minimum, there was no offer and acceptance. Therefore, the Court must grant Defendant's July 8, 2011 motion for summary judgment.

    A. GMIG's May 30, 2007 Quotation Was Not an Offer and, Therefore, Ms. Branker's June 19, 2007 Email Confirming Selection Was Not an Acceptance.

FAR 13.004(a) begins: "*A quotation is not an offer and, consequently, cannot be accepted by the Government to form a binding contract.* Therefore, issuance by the Government of an order in response to a supplier's quotation does not establish a contract." 48 C.F.R. § 13.004(a) (2011) (emphasis added). Here, GMIG argues that Ms. Branker's "notification of selection was an award of a contract." Compl. ¶ 16, May 9, 2011; see also id. ¶¶ 13-15, 23-24. However, as Defendant has argued, the plain language of the FAR definitively forecloses this possibility. See Def.'s Mem. 1, Sep. 12, 2011; Def.'s Mot. 7-8, Jul. 8, 2011. Indeed, GMIG itself quotes FAR 13.004(a) to support its alternative argument that Ms. Branker's email constituted an *offer* (as opposed to an *acceptance*). See Compl. ¶ 18, May 9, 2011. For these reasons, GMIG's quote created no cognizable offer for Ms. Branker's June 19, 2007 email to accept.

    B. Ms. Branker's June 19, 2007 Email Was Not an "Order" within the Meaning of FAR 13.004(a) and, Therefore, Mr. McCaulley Did Not Accept It through the Totality of Their Email Exchanges.

FAR 13.004(a) continues: "The order is an offer by the Government to the supplier to buy certain supplies or services *upon specified terms and conditions*. A contract is established when the supplier accepts the offer." 48 C.F.R. § 13.004(a) (2011) (emphasis added). Here, GMIG argues in the alternative that Ms. Branker's June 19, 2007 email to Mr. McCaulley constituted an "order," which GMIG accepted through the totality of their email exchanges. See Pl.'s Mem. 5-6, Aug. 5, 2011; Compl. ¶¶ 17-19, 23-24, May 9, 2011. At issue then is whether, by this email, HHS offered to purchase grants training and development courses from GMIG "upon specified terms and conditions." It did not.

First and foremost, Ms. Branker's June 19, 2007 email expressly invited Mr. McCaulley "to contact [her] with *possible* dates to conduct training." Compl., May 9, 2011, Ex. B (emphasis added). By its very terms, an email concerning "possible" dates is

not an offer "upon specified terms and conditions."  Def.'s Mem. 6, Sep. 12, 2011.  Moreover, even if the June 19, 2007 email were an order within the meaning of FAR 13.004(a), GMIG did not accept it "upon specific terms or conditions."  In paragraph 17 of its May 9, 2011 complaint, GMIG points the court to Exhibit C, which documents a series of emails exchanged between Ms. Branker and Mr. McCaulley from the period after GMIG's selection but before HHS's rescission.  See Compl. ¶ 17, May 9, 2011.  Plaintiff asserts in paragraph 19 that it "accepted any offer made by the government [through those Exhibit C emails] and that a contract was formed."  Id. ¶ 19.  Yet, not one of the emails from either party discussed a firm date for the training classes; rather, Exhibit C simply illustrates a sequence of Ms. Branker proposing "tentative" dates and Mr. McCaulley adding them to GMIG's calendars.  See id. Ex. C.  Rather than evidencing a contract, Exhibit C merely evidences a contract *negotiation*.  Def.'s Mem. 6, Sep. 12, 2011.  Plaintiff virtually conceded this point by positing that it accepted "any offer" Defendant made over the email exchange.  Def.'s Mot. 8, Jul. 8, 2011.  Under Iqbal and Twombly, however, Plaintiff has an obligation to plead with particularity.  GMIG does not point to a single particular order and acceptance in its pleadings, and there is no evidence of one in GMIG's own exhibits.

Plaintiff tries to save this argument by noting that Ms. Hill referred to Ms. Branker's June 19, 2007 email as an "offer letter" in the former's June 27, 2007 notice to Mr. McCaulley, which rescinded GMIG's selection.  Pl.'s Mem. 5-6, Aug. 5, 2011.  Yet, the "[Court] '[is] not bound to accept as true a legal conclusion couched as a factual allegation.'"  Gant v. United States, 417 F.3d 1328, 1331 (Fed. Cir. 2005) (per curiam) (quoting Papasan, 478 U.S. at 286).  For similar reasons, Mr. McCaulley's self-serving declaration that he "construed [the] June 19, 2007 letter as an offer to Plaintiff GMIG to provide the requested grants training services under the terms specified by my quote" is not persuasive.  See McCaulley Decl. ¶ 3, Aug. 5, 2011.  For the above reasons, Ms. Branker's June 19, 2007 email neither caused the Government to order nor GMIG to accept a contract for training courses "upon specified terms and conditions."

    C. The Parties' Failure to Make Use of Form HHS-350 Suggests that There Was No Procurement Contract Between Them.

Pursuant to 48 C.F.R. § 317.71 (2006) ("Supply and Service Acquisitions Under the Government Employees Training Act"), which governs the events in this case: "Basic policy, standards, and delegations of authority to approve training are contained in HHS Personnel Manual Instruction 410-1."  Id. § 317.7101 ("Applicable regulations").  HHS Instruction 410-1 (HHS Transmittal 84.24, Sep. 28, 1984) states: "The Form HHS 350 may be used as a purchase order only when it is signed by a person delegated such procurement authority."  410-1-10 ¶ C.  The parties, of course, present conflicting interpretations of this imprecise "instruction."  Plaintiff stresses that form HHS-350 "may be used," suggesting its use as a purchase order is discretionary.  Pl.'s Mem. 2, Sep. 22, 2011.  Instead, Plaintiff characterizes the form as "an authorization for payment" but

promises to provide evidence in support of that contention only at a future date. Id. at 3 ("Plaintiff contends, and will present evidence of same if the case is heard on the merits, that the 350 form is actually an authorization for payment rather than a purchase order."); McCaulley Decl. ¶ 2, Sep. 22, 2011. Defendant, in contrast, reads HHS Instruction 410-1 as providing for the use of form HHS-350 as the necessary purchase order to procure GETA training in 2007. Def.'s Mem. 4-5, Sep. 12, 2011.

Plaintiff supports its interpretation of HHS Instruction 410-1 by pointing the Court to its prior dealings with Defendant, where Plaintiff rendered services *before* Defendant provided it with a signed form HHS-350 ("Training Nomination and Authorization"). McCaulley Decl. ¶ 2, Sep. 22, 2011 ("I have entered into several agreements with Defendant HHS for the provision of training services. . . . [O]n at least three (3) occasions, I did not receive the HHS 350 Form until after services were provided."); see also id. Ex. A (documenting one such occasion). Nevertheless, while prior dealing is a useful tool in contract *interpretation*, there is no applicable authority for the proposition that it may be used to establish contract formation or to excuse a missing but necessary element of a government contract, especially where the government contractor did not render any services under the contract. Def.'s Mem. 8, Sep. 12, 2011; see also Jumah v. United States, 385 F. App'x. 987, 2010 WL 2768460, at *3 (Fed. Cir. Jul. 9, 2010) (per curiam) ("[Plaintiff-Appellant] also argues that even if a written contract did not exist, the surrounding evidence demonstrates that an implied-in-fact contract [with the Government] existed based on past course of dealing. We reject his assertions."). Without more cognizable evidence, Plaintiff's interpretation cannot stand. In contrast, Defendant's interpretation is the more natural reading of Instruction 410-1, which is that form HHS-350 was the purchase order HHS used to procure GETA training in 2007, but it could be used only when someone with procurement authority had signed it. Since the parties did not make use of the requisite GETA purchase order, there was no binding contract between them for grants training and development.

## Conclusion

For the foregoing reasons, Plaintiff cannot meet its burden to show the offer and acceptance of any contract with Defendant, within the meaning of Hometown Financial. Thus, under Celotex, the Court must GRANT Defendant's motion for summary judgment. The Court hereby dismisses Plaintiff's complaint with prejudice. No costs.

IT IS SO ORDERED.

s/Thomas C. Wheeler<br>
THOMAS C. WHEELER<br>
Judge